UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

WESLEY FINANCIAL GROUP, LLC,

    Plaintiff,

v.                                                   Case No. 6:23-cv-2347-RBD-LHP

WESTGATE RESORTS, LTD., et al.,

    Defendants.
_____

### Uniform Case Management Report

    The goal of this case management report is to "secure the just, speedy, and inexpensive determination of" the action. *See* Fed. R. Civ. P. 1. Under Local Rule 3.02(a)(2), this case management report should be used in all civil cases except those described in Local Rule 3.02(d). Individual judges may have additional case management preferences that can be found under each judge's name on the Court's website, flmd.uscourts.gov/judges/all.

1. **Date and Attendees**

> The parties may conduct the planning conference "in person, by telephone, or by comparable means[.]" *See* Local Rule 3.02(a)(1).

The parties conducted the planning conference by telephone on 2/12/2024. Patrick Bradford, Julie Capehart, Roy Taub, and Susana Garcia attended the conference.

2. **Deadlines and Dates**

The parties stipulate that all discovery will be stayed pending the Court's ruling on Defendants' Motion to Stay. If the Motion is denied, the parties will have 30 days to exchange initial disclosures under Fed. R. Civ. P. 26(a)(1). Although Defendants have moved to stay discovery, they are mindful of their obligations to confer about and propose a case schedule. Defendants therefore propose a schedule not stated with certain dates, but in terms of the number of days from either the denial of the Motion to Stay or, if it is granted, from the Court's lifting of a stay of discovery (assuming discovery is necessary, and the further assuming the Court does not then direct the parties to submit a case management report). The

timeframes proposed by Defendants are based on the current asserted counts and allegations. Defendants' proposed schedule is made subject to and without waiver of Defendants' Motion to Stay. The parties request the following deadlines and dates:

| Action or Event | Plaintiff's Proposed Date | Defendants' Proposed Dates |
|---|---|---|
| Deadline for providing mandatory initial disclosures. *See* Fed. R. Civ. P. 26(a)(1). | 3/13/2024 | 30 days from denial of the Motion to Stay or the Court's lifting of a stay of discovery |
| Deadline for moving to join a party, *see* Fed. R. Civ. P. 14, 19, and 20, or amend the pleadings, *see* Fed. R. Civ. P. 15(a). | 120 days after initial disclosures | 120 days after initial disclosures |
| Deadline for completing fact discovery and filing any motion to compel regarding fact discovery. | 8/15/2025 | 18 months from initial disclosures |
| Deadline for serving expert disclosures under Rule 26(a)(2), including any report required by Rule 26(a)(2)(B).     Plaintiff | 9/19/2025 | 30 days from the close of fact discovery |
| Defendant | 10/17/2025 | 30 days from Plaintiff's disclosure |
| Rebuttal | 11/14/2025 | 21 days from Defendant's disclosure |
| Deadline for completing expert discovery and filing any motion to compel discovery regarding expert discovery. *See* Fed. R. Civ. P. 37; *Middle District Discovery* (2021). | 12/30/2025 | 30 days from Plaintiff's rebuttal |
| Deadline for moving for class certification, if applicable. *See* Fed. R. Civ. P. 23(c). | N/A | N/A |
| Deadline for filing any dispositive and *Daubert* motion. *See* Fed. R. Civ. P. 56. (Must be at least five months before requested trial date.) | 4/30/2026 | 60 days from completion of |

2

| | | |
|---|---|---|
| | | expert discovery |
| Deadline for participating in mediation. *See* Local Rules, ch. 4.<br><br>Enter mediator's name, address, and phone number. | 5/27/2026 | 30 days from filing of dispositive motion deadline |
| Date of the final pretrial meeting. *See* Local Rule 3.06(a). | 8/6/2026 | Two weeks before final pretrial conference |
| Deadline for filing the joint final pretrial statement, any motion in limine, proposed jury instructions, and verdict form. *See* Local Rule 3.06(b). (Must be at least seven days before the final pretrial conference.) | 8/13/2026 | One week before final pretrial conference |
| Date of the final pretrial conference. *See* Fed. R. Civ. P. 16(e); Local Rule 3.06(b). | 8/20/2026 | One month prior to trial term |
| Month and year of the trial term. | 10/2026 | Six months from dispositive motion deadline |

The trial will last approximately 15-20 days and be

☒ jury.

☐ non-jury.

3. **Description of the Action**

**PLAINTIFF'S STATEMENT:**

Plaintiff Wesley Financial Group, LLC, provides timeshare exit services to timeshare owners who seek to exit their timeshares because the timeshare developer made false promises and used manipulative, fraudulent, and high-pressure sales tactics to coerce them into purchasing and/or upgrading their timeshares. By their terms timeshare contracts terminate only at the death of the owner. Westgate is one such timeshare developer, whose unethical behavior helped create the need for a timeshare exit services market. The market for exit services was created based on consumer demand and in response to Westgate's (and other developers')

3

constantly escalating prices (including the prices of the timeshare itself, maintenance fees, resort fees and financing fees) and poor service (including poor quality lodging and the inability of owners to schedule their preferred vacation stays).

Wesley alleges that Westgate has made false and misleading statements and omissions of fact in its advertising regarding the Legacy Program, Westgate's purported exit program. These false and misleading statements and omissions materially misrepresented the services that Westgate provides through the Legacy Program and deceived consumers.

Wesley further alleges that Westgate has colluded with other timeshare developers and with the American Resort Development Association (ARDA), a trade association to which many large developers belong, to put Wesley and other timeshare exit companies out of business by, among other things, interfering with the contracts between Wesley and its customers; by requiring its owners to sign an affidavit swearing they have not engaged a third party exit company like Wesley as a condition for being released from their timeshares; developing its own competing exit program to take away business from other exit companies; and conspiring with ARDA to induce the Better Business Bureau to revoke Wesley's accreditation and to cause AARP to stop accepting advertisements from Wesley. Westgate's unilateral and collusive conduct is aimed at putting Wesley out of business so as to further harm consumers by increasing prices in an unchecked manner, and by delivering poor lodging and other services.

ARDA is a vehicle through which Westgate has colluded both with ARDA and many of ARDA's controlling trustees over the past several years – developers like diamond and Bluegreen, and their powerful counsel.

Wesley contends that has engaged in false advertising in violation of the Lanham Act (Count I). Wesley further contends that Westgate's actions, in conjunction with ARDA and other timeshare developers, violate Sections 1 and 2 of the Sherman Act (Counts II-V), as well as the Florida Antitrust Act of 1980 (Count VI). Westgate participates in the aftermarket for Westgate timeshare sales by offering both exits from timeshare contracts and exit services to select and access the exit. As in *Eastman Kodak Co. v. Image Tech. Servs.*, 504 U.S. 451, 481 (1992). Westgate controls 100% of the market share for exit products, and illegally ties its exit services to its exit products, resulting in antitrust injury to competing exit service companies, including Wesley. In addition, Westgate violates the antitrust laws by colluding with ARDA and other developers to injure timeshare exit service competition in a variety of ways recited in the Complaint. Westgate's conduct injures competition by harming consumers who, if Wesley and other exit firms are eliminated, will be further subjected to price increases and the provision of awful service to customers. Westgate's actions also constitute unlawful monopolization and attempted monopolization.

Westgate's conduct further violates Florida Deceptive and Unfair Trade Practices Act (Count VII) by, *inter alia*, prohibiting timeshare owners from using counsel or any third party, including Wesley to assist them in negotiating a timeshare exit. Finally, Westgate's actions constitute tortious interference with Wesley's contracts and advantageous business relationships (Count VIII) and civil conspiracy to commit tortious interference (Count IX).

**DEFENDANTS' STATEMENT:**

Defendants have moved to dismiss Wesley's First Amended Complaint in its entirety for failure to state a claim for relief, and respectfully refers the Court to the Motion to Dismiss for a detailed discussion as to how Wesley has not plausibly stated a single claim for relief.  Briefly stated, this is a retaliatory lawsuit filed in the wake of the Middle District of Tennessee's determination in a lawsuit filed by Defendants against Wesley that Wesley's business model violates the Tennessee Consumer Protection Act and causes consumers to default on their payment obligations on false and misleading representations that Wesley provides a legitimate legal "exit service" to allow timeshare owners to terminate their timeshares interests.  The adjudicated fact that Wesley is an unlawful business precludes the antitrust, FDUTPA, and tortious interference claims, if not others, for lack of antitrust standing and consumer harm.

Moreover, Wesley's claims are premised on a totally mistaken understanding of antitrust law, concocting "products" and "markets" that do not exist or have been defined in a way that implausibly renders Defendants monopolists and at the same time precludes antitrust claims, and confusing Defendants' required assent to the termination of a contractual relationship as some form of "market power" when the courts, including the Eleventh Circuit, have clearly held it is a power arising from a voluntary contractual agreement, and therefore cannot form the basis of an antitrust claim.  Wesley's admission that the average price for its so-called "exit service" is more than double the maximum Defendants ever charge creates a situation where antitrust standing and consumer harm simply cannot be found. The conspiracy and monopolization claims likewise fail to state plausible claims, particularly given the settled case law that a trade association, absent extraordinary circumstances that have not been alleged here, is incapable of conspiring with one of its members.  The Lanham Act claim is similarly deficient, as no false statements have been plausibly identified. The state law claims (FDUTPA, tortious interference, civil conspiracy) also fail to show any consumer harm or any intentional conduct directed toward timeshare owners who have a contract with Wesley, something Wesley cannot show because it concedes it requires its customers to keep their working relationship with Wesley a secret.  This lawsuit has no basis in fact or law and should be disposed of at the motion to dismiss stage.

4. **Disclosure Statement**

    ☒ The parties have filed their disclosure statement as required by Federal Rule of Civil Procedure 7.1 and Local Rule 3.03.

5. **Related Action**

☒ The parties acknowledge their continuing duty under Local Rule 1.07(c) to notify the judge of a related action pending in the Middle District or elsewhere by filing a "Notice of a Related Action." No notice need be filed if there are no related actions as defined by the rule.

6. **Consent to a Magistrate Judge**

> "A United States magistrate judge in the Middle District can exercise the maximum authority and perform any duty permitted by the Constitution and other laws of the United States." Local Rule 1.02(a). With the parties' consent, a district judge can refer any civil matter to a magistrate judge for any or all proceedings, including a non-jury or jury trial. 28 U.S.C. § 636(c).
>
> The Court asks the parties and counsel to consider the benefits to the parties and the Court of consenting to proceed before a magistrate judge. Consent can provide the parties certainty and flexibility in scheduling. Consent is voluntary, and a party for any reason can decide not to consent and continue before the district judge without adverse consequences. *See* Fed. R. Civ. P. 73(b)(2).

☐ The parties do consent and file with this case management report a completed Form AO 85 "Notice, Consent, and Reference of a Civil Action to a Magistrate Judge," which is available on the Court's website under "Forms."

☒ The parties do not consent.

7. **Preliminary Pretrial Conference**

☒ The parties do not request a preliminary pretrial conference before the Court enters a scheduling order.

☐ The parties do request a preliminary pretrial conference, and the parties want to discuss enter discussion points.

8. **Discovery Practice**

> The parties should read the Middle District Discovery Handbook, available on the Court's website at flmd.uscourts.gov/civil-discovery-handbook, to understand discovery practice in this District.

☒ The parties confirm they will comply with their duty to confer with the opposing party in a good faith effort to resolve any discovery dispute before filing a motion. *See* Local Rule 3.01(g); *Middle District Discovery* (2021) at § I.A.2.

9. **Discovery Plan**

   The parties submit the following discovery plan under Rule 26(f)(2):

   A. The parties agree to the timing, form, or requirement for disclosures under Rule 26(a):

   ☐ Yes.
   ☒ No; instead, the parties agree to these changes: The parties have respective proposals for these disclosures, both of which deviate from the timing called for in Rule 26(a).

   B. Discovery may be needed on these subjects:

   Plaintiff submits that discovery is needed on the allegations in Plaintiff's complaint, including but not limited to the business practices of other timeshare exit companies, Westgate and other timeshare developers; Westgate's advertisements; exit customers; the geographic and product markets alleged in the complaint; and the activities of timeshare industry trade associations. The parties may identify the need for discovery on additional topics as the pleadings are settled.

   Defendants submit that given the implausible nature of Plaintiff's allegations, in particular conspiracy allegations that sweep the entire timeshare industry within their ambit by asserting a claim against a trade association and not business that actually compete in any relevant market, creates an overbroad scope of discovery that cannot be allowed and further weighs in favor of staying discovery until the Motion to Dismiss is decided. Defendants dispute that the broad scope articulated by Plaintiff is appropriate, although Defendants will require extensive discovery of Plaintiff's dealings with and marketing directed toward its customers regarding at least the issues of market definition.

   C. Discovery should be conducted in phases:

   ☒ No.
   ☐ Yes; describe the suggested phases.

   D. Are there issues about disclosure, discovery, or preservation of electronically stored information?

&boxtimes; No.
□ Yes; describe the issue(s).

E. &boxtimes; The parties have considered privilege and work-product issues, including whether to ask the Court to include any agreement in an order under Federal Rule of Evidence 502(d).

F. The parties stipulate to changes to the limitations on discovery imposed under the Federal Rules of Civil Procedure and Local Rule 3.04 or other limitations:

&boxtimes; No.
□ Yes; describe the stipulation.

## 10. Request for Special Handling

&boxtimes; The parties do not request special handling.

□ The parties request special handling. Specifically, describe requested special handling.

□ Enter party's name unilaterally requests special handling. Specifically, describe requested special handling.

## 11. Certification of familiarity with the Local Rules

&boxtimes; The parties certify that they have read and are familiar with the Court's Local Rules.

## 12. Signatures

*/s/John J. Bennett*
John J. Bennett, Esq.
Florida Bar No. 98257
Paul N. Mascia, Esq.
Florida Bar No. 0489670
NARDELLA & NARDELLA, PLLC
135 W. Central Blvd., Suite 300
Orlando, FL 32801
Telephone: (407) 966-2680

Fax: (407) 966-2681
jbennett@nardellalaw.com
pmascia@nardellalaw.com

&

Patrick A. Bradford, Esq.
Bradford Edwards LLP
12 East 49th Street, 11th Floor
New York, NY 10017
Telephone: (917) 671-9406

*Counsel for Plaintiff Wesley Financial Group, LLC*

GREENSPOON MARDER LLP

*/s/ Roy Taub*
Richard W. Epstein (Bar No. 229091)
Jeffrey A. Backman (Bar No. 662501)
Roy Taub (Bar No. 116263)
200 East Broward Blvd., Suite 1800
Fort Lauderdale, Florida 33301
Telephone: 954-491-1120
Facsimile:  954-343-6958
richard.epstein@gmlaw.com
maria.salgado@gmlaw.com
jeffrey.backman@gmlaw.com
mary.torres@gmlaw.com
roy.taub@gmlaw.com
cheryl.cochran@gmlaw.com

Susana Cristina Garcia (Bar No. 92259)
201 East Pine Street, Suite 500
Orlando, Florida 32801
Telephone: 407-425-6559
Facsimile : 407-244-8115
tina.garcia@gmlaw.com
melissa.spinner@gmlaw.com

*Attorneys for Defendants*