UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| WESLEY FINANCIAL GROUP, LLC,<br><br>                              Plaintiff,<br>v.<br><br>WESTGATE RESORTS, *et al.*,<br><br>                              Defendants. | Case No: 6:23-cv-02347-RBD-LHP |

**PLAINTIFF'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEF**

Plaintiff, by its undersigned counsel, pursuant to Federal Rule of Civil Procedure 15(d) and Local Rule 3.01(a), requests leave to file a supplemental brief in support of its Response in Opposition to Defendant's Motion [Doc. 54] (the "Response"), in light of issues raised by the Court at the July 3, 2024, hearing (the "Hearing") held on the Response and Defendants' underlying Motion to Dismiss [Doc. 43].

In light of the Court's questioning at the Hearing, Plaintiff respectfully requests the Court to consider a supplemental brief, not to exceed five (5) pages in length, relevant to the issues of separate tying and tied products and the monopolization claim (and *Trinko* defense) raised by the Court. Here the tying product and the tied product are complementary. Plaintiff submits that supplementing the Response to address these issues will aid the court in resolution

of the Motion to Dismiss and increase judicial efficiency by clarifying how any potential deficiencies may be re-pled by Plaintiff.

1. **Separate Tying and Tied Products**. As relevant to Counts I and II (tying claims), the product was defined as the exit product. The *forms* of exit (deed in lieu, mutual release, quit claim deed, nonjudicial foreclosure) are relevant to the product-determination. The exit product is not part of the foremarket product (the timeshare interest itself), but instead is *dissolution* of the foremarket contract, *on the best terms for the owner,* regarding both time and form. For example, a deed in lieu is preferable because it ends Westgate's negative credit reporting, and a quick nonjudicial foreclosure is preferable to a drawn-out one, as it reduces the duration of negative credit reporting. Wesley helps its customers navigate Westgate's maze to obtain the most desirable exit product (while Westgate redoubles its sales efforts to convince owners to instead recast their onerous debt over a longer timeframe, or even worse—purchase more timeshare). In Westgate's view, it's owner contracts are for life, and payments must continue forever, regardless of job loss, illness, death of spouse, age/infirmity and inability to travel. Westgate's untenable position is what created the demand for an exit product—a product whose market demand is millions of dollars annually and for which Westgate itself competes. As noted in Plaintiff's Opposition, Doc. 54 n.4, *Bazal v. Belford Trucking Co.,* 442 F. Supp. 1089, 1094-1096 (S.D. Fla. 1977) identified many

cognizable intangible antitrust tying "products" similar to the product alleged here. *Id.* (collecting and discussing precedent of "products" including an employment contract, a franchise agreement, a "privilege," a "credit," membership, and a management contract). *See also Miller v. Granados*, 529 F.2d 393, 396 (5th Cir. 1976) (an apartment management services agreement was recognized as a typing product).

The market demand for the tied product, exit services, is further evidenced by Wesley and other exit companies, each providing its own exit service to access exit products. Wesley, for example, uses its knowledge of the Byzantine internal workings of over 100 different timeshare developers to target written and oral exit requests to appropriate departments and individuals based on extensive experience. In addition to communicating with many different people and departments at the developer, Wesley also recommends that its clients contact certain of the following entities to complain about their treatment by Westgate: (i) Federal Trade Commission, (ii) Better Business Bureau, (iii) Consumer Finance Protection Bureau, (iv) local, city, state and/or federal political representatives, (v) military organizations when the customer is a member of the U.S. military, (vi) state Attorneys General, and (vii) posting reviews of the developer on social media. For each client Wesley recommends which of these agencies to contact, and then coordinates and curates the communications based, in significant part, on the

lies and misrepresentations of the developer. The language of each such communication can be extremely important and Wesley advises its clients accordingly. By way of example, some developers respond to extreme medical concerns, others have a history of letting military families out in some circumstances. Because each developer's internal policies and personnel (who actually make exit decisions) are different and frequently change over time, Wesley tracks such changes for the benefit of its clients. Throughout Wesley's provision of its exit services, it advocates for the best exit product that it believes can be won for each client. The exit service of accessing and navigating Westgate's system is separate from the exit product, sufficiently stating separate antitrust products, as predicate for viable tying claims.

2. **Monopolization Claim Withstands *Trinko* Defense.** Defendant raised a *Trinko* defense (*Verizon Communications, Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 US 398 (2003)) to Plaintiff's refusal to deal monopolization claim, asserting that Westgate has the right to refuse to deal with any owner who is assisted by Wesley, another exit firm, a lawyer, or even a family friend. Westgate's refusal to deal is cemented by requiring the owner to sign an affidavit, under penalty of perjury, and the implausible threat of rescinding the exit if, after the exit is given, Westgate determines that the owner worked with any third party. *Trinko*, however, has exceptions. As noted in Plaintiff's Opposition, Doc. 54 at n. 14, the Eleventh Circuit

has recognized the qualified nature of the right to deal as articulated in *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1985), and that refusal to deal can be violative of § 2 after *Trinko*, when conduct "fit[s] within existing exceptions or provide[s] a basis, under traditional antitrust principles, for recognizing a new one." *Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*, 797 F.3d 1248, 1265 (11th Cir. 2015). During argument at the Hearing, the Court posited a typical refusal to deal situation, where a realtor refuses to deal with a home buyer if the buyer is working with a competing realtor. This typical refusal to deal is light years away from the anticompetitive conduct in this case, where Westgate, having locked owners into draconian lifetime contracts where promised services are routinely not provided, then prohibits owners from being assisted by *anyone other than Westgate* to attempt to achieve exit product—i.e. the extraction from the foremarket contract—and additionally threatens rescission of an exit, lawsuit, or the specter of criminal prosecution for perjury should an owner dare be assisted by anyone and not disclose that fact. This conduct by Westgate is a far cry from traditional refusals to deal and is not excused by *Trinko*.

## CERTIFICATE OF CONFERRAL

Pursuant to Local Rule 3.01(g), on July 8, 2024, the undersigned conferred with Defendants' counsel. Defendants oppose Plaintiff's request to file a supplemental brief.

For the foregoing reasons, Plaintiff respectfully requests permission to file a supplemental brief, not to exceed five (5) pages to address these supplemental issues in resolution of the Motion to Dismiss.

Dated: July 9, 2024.

Respectfully submitted,

/s/ *Paul N. Mascia*
John J. Bennett, Esq.
Florida Bar No: 98257
Paul N. Mascia, Esq.
Florida Bar No: 0489670
**NARDELLA & NARDELLA, PLLC**
135 W. Central Blvd., Suite 300
Orlando, Florida 32801
Telephone: (407) 966-2680
Facsimile: (407) 966-2681
pmascia@nardlellalaw.com
jbennett@nardellalaw.com

&

Patrick A. Bradford, Esq. (admitted *pro hac vice*)
Bradford Edwards LLP
12 East 49th Street, 11th Floor
New York, NY 10017
Telephone: (917) 671-9406
pbradford@bradfordedwards.com

*Counsel for Plaintiff Wesley Financial Group, LLC*

## **CERTIFICATE OF SERVICE**

  I hereby certify that a true and correct copy of the foregoing has been served on the following by the Court's electronic filing system on this 9th day of July 2024:

**GREENSPOON MARDER LLP**

Richard W. Epstein, Esq.
Jeffrey A. Backman, Esq.
Roy Taub, Esq.
Susana Christina Garcia
200 E. Broward Blvd., Suite 1800
Fort Lauderdale, FL 33301
richard.epstein@gmlaw.com
jeffrey.backman@gmlaw.com
roy.taub@gmlaw.com
tina.garcia@gmlaw.com

*Counsel for Defendants*

              */s/ Paul N. Mascia*
              Paul N. Mascia